**UNITED STATES of America,
Appellant,**

v.

**Gene McBRIDE, Appellee.**

**No. 87–2584.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1988.

Decided Dec. 7, 1988.

---

tion in granting the new trial. For reasons discussed below, we affirm.

## I. BACKGROUND

While employed as a Farmers Home Administration (FmHA) County Supervisor, McBride obtained a loan from FmHA to purchase cattle and gave FmHA a mortgage on the cattle to secure the loan. He later sold the cattle to multiple buyers without the consent of FmHA. As a result of these sales, the United States brought this action against McBride.

A grand jury indicted McBride on a twenty-count indictment, later amended to eighteen counts. The indictment charged McBride with one count of conspiracy to defraud the United States Government in violation of 18 U.S.C. § 371, two counts of conversion of government money in violation of 18 U.S.C. § 641, eleven counts of unauthorized sale of property mortgaged to the government in violation of 18 U.S.C. § 658, and four counts of submitting false statements to a government agency in violation of 18 U.S.C. § 1001.

The first trial on this indictment resulted in a mistrial during voir dire when a prospective juror stated before the venire panel what he had read in a newspaper about McBride's attempt to enter into a plea bargain.

The second trial began some fourteen months later. At the close of the Government's case, the district court granted McBride's motion for acquittal on fourteen of the eighteen counts. The trial proceeded on the surviving counts, all dealing with charges of submitting false statements to a government agency in violation of 18 U.S. C. § 1001.

The false statement charges arose from transactions in which McBride, as County Supervisor for FmHA, arranged FmHA financing for cattle buyers to buy McBride's cattle which were mortgaged to FmHA. McBride presented false documents to FmHA relating to the cattle sales and the FmHA loans for these trans-

Sandra Wilson Cherry, Asst. U.S. Atty., Little Rock, Ark., for appellant.

Larry Dean Kissee, Mammoth Spring, Ark., for appellee.

Before JOHN R. GIBSON, Circuit Judge, and BRIGHT and HENLEY, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

The United States, pursuant to 18 U.S.C. § 3731, appeals the district court's [1] order granting a new trial after a jury found Gene McBride guilty of four counts of willfully and knowingly making false statements to a government agency in violation of 18 U.S.C. § 1001. The Government contends the district court abused its discre-

---

[1]. The Honorable Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

actions. These documents indicated that third parties owned the cattle when, in fact, McBride owned the cattle and used third parties as intermediaries for himself.

During jury deliberations, the trial judge called counsel to the courtroom and advised them that he had certain misgivings about the fairness of the trial. He specifically noted concern about three trial errors, all of which had not been objected to by McBride or noted by the court when they occurred.

Two of the trial errors dealt with the appropriateness of questions asked of witnesses by the assistant United States attorneys. In the first situation, McBride's counsel had asked Government witness Terry Smith Poole, McBride's former girlfriend, to explain why she and McBride had split up. When Poole did not respond to the question, McBride's counsel withdrew the question. On redirect examination, the United States attorney asked the same question and Poole responded that she asked McBride to leave because she was tired of him beating her. Poole then burst into tears and the court ordered a short recess.

The second instance involved defense witness Clifford H. Barnett, a former FmHA County Supervisor. The prosecutor had asked Barnett if he had been forced to resign from the FmHA as a result of a criminal investigation and whether the investigation resulted in criminal charges. Barnett denied both accusations. Although the prosecutor possessed some information about an in-house investigation into alleged improprieties on Barnett's part, the information submitted to the court after trial indicated that Barnett's responses were accurate.

The third trial error dealt with the propriety of portions of the final argument made by one of the prosecutors. The Government argued that the parties had agreed to "tack on money" to an agreed sale price for his cattle sold through his nominees to third parties in order to raise money for McBride to use in paying off his previous debts. Although the prosecutor did not use the specific words conspiracy and conversion, this statement raised an inference that a conspiracy did exist and that money, which should have been paid to FmHA, had been converted. The trial court concluded that this statement indeed did refer to the previously dismissed conspiracy and conversion counts. Moreover, the statement directly contradicted the evidence admitted on the remaining false statement counts by suggesting that McBride profited from selling his cattle through intermediaries and thus cheated FmHA.

After discussing these concerns, counsel and the trial judge agreed to wait for the jury's verdict. Later that same day, the jury returned guilty verdicts on the four remaining counts. The court imposed a sentence of three months' imprisonment on two counts and a suspended sentence on the remaining two counts.

McBride then moved for a new trial, contending that he had been denied a fair trial and citing the incidents noted by the trial court as support for the motion. The trial court granted the motion and set aside McBride's conviction and sentence, reasoning that the interests of justice required a new trial because the three trial errors may have confused the jury and prejudiced the appellant.

Specifically, the court found that the effect of witness Poole's breakdown on the stand and her statement that McBride beat her was quite dramatic and obviously would produce unfair prejudice against McBride. Additionally, the court found that the Government's effort to impeach witness Barnett was prejudicial, in light of the lack of a factual basis for the questions.

Finally, the court held that the prosecutor's statement in final argument about "tacking on money" deprived McBride of a fair trial. The trial court noted that this statement evidenced the Government's unwillingness to accept the court's prior ruling to dismiss fourteen of the original counts, particularly the conversion and conspiracy counts. Furthermore, the court concluded that the statement was misleading because it conflicted with the evidence

admitted and appeared to be an effort to manufacture a scenario contrary to undisputed facts.

From this grant of a new trial, the Government appeals.

## II. DISCUSSION

The United States attacks the district court's ruling as an abuse of discretion, contending that: (1) McBride waived the three trial errors by failing to object to them, and (2) these alleged errors by the prosecutor in the conduct of the trial amounted to insubstantial grounds for a new trial.

■ Initially, we note that both parties assume that the appropriate standard of review when the government appeals, pursuant to recently amended 18 U.S.C. § 3731,[2] an order granting a new trial in a criminal case is one of abuse of discretion. Neither party has presented, nor has independent research uncovered, published case authority in this circuit that squarely addresses this point. We agree that the applicable standard is abuse of discretion. We approve this standard for three reasons. First, Rule 33 of the Federal Rules of Criminal Procedure, which governs new trial motions, authorizes the court to grant a new trial "in the interest of justice." Such a standard requires the district court to balance the alleged errors against the record as a whole and evaluate the fairness of the trial. Second, this standard is consistent with that applied in civil cases, see, e.g., Commercial Nat'l Bank v. Missouri Pac. R.R., 631 F.2d 563, 565 (8th Cir.1980), and in criminal cases when a denial of a new trial motion is challenged, see, e.g., United States v. Conzemuis, 611 F.2d 695, 696 (8th Cir.1979).

■ A defendant's failure to object to an alleged error generally precludes him from asserting the claimed error in a motion for new trial. United States v. Jones, 404 F.Supp. 529, 539 (E.D.Pa.1975), aff'd, 538 F.2d 321 (3d Cir.1976). Defense counsel must take the initiative in bringing alleged trial error to the court's attention. Counsel cannot stand idly by, permit the presentation of erroneous matter at trial, and then complain about the inclusion of that evidence in the trial record, absent plain error. McNeely v. United States, 353 F.2d 913, 917 (8th Cir.1965).

■ Nevertheless, trial errors may be raised as plain error in appropriate circumstances. United States v. Cable, 446 F.2d 1007, 1009 (8th Cir.1971); Fed.R.Crim.P. 52(b). The plain error rule connotes error that has affected a defendant's substantial rights, resulting in a miscarriage of justice. United States v. Anderson, 654 F.2d 1264, 1268 (8th Cir.), cert. denied, 454 U.S. 1127, 102 S.Ct. 978, 71 L.Ed.2d 115 (1981). Although not specifically calling the alleged trial errors plain error, the trial court found that the prosecutor's conduct affected McBride's right to a fair trial. More precisely, the trial judge found that the cumulative impact of the three errors resulted in a serious violation of McBride's right to a fair trial.

■ We entertain no doubt that the prosecutor's actions in question here amounted to trial error. The Government's apparent reference in final argument to counts that had been previously dismissed is particularly troubling and should not have been admitted. Although the Government contends that this remark referred to the four remaining false statement counts, the trial judge disagreed, indicating that in its context the remark referred to the dismissed counts. As the trial judge found, such argument could seriously mislead the jury and, therefore, unfairly infect the trial.

■ The evidentiary issues also involve error and, in the instance of the prosecutor's questioning of McBride's girlfriend, perhaps serious error. This question did not relate to McBride's guilt on the counts charged. See Fed.R.Evid. 401. Instead, the answer provided highly prejudicial material as an attack on McBride's character.

2. The Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 1837, amended 18 U.S.C. § 3731, affording the government a right to appeal a post-conviction grant of a new trial.

**1320**

Such evidence of specific acts of misconduct ordinarily is inadmissible under the Rules of Evidence. *See* Fed.R.Evid. 404(b). Regardless of McBride's failure to object, the trial court could have considered the answer to be confusing to the jury and prejudicial to appellant.

 As to the Barnett testimony, the prosecutor may not, by innuendo, attack a witness' credibility by asking about a witness' criminal conduct when the prosecutor has no basis for the question. *See United States v. Davenport,* 753 F.2d 1460, 1463–64 (9th Cir.1985) (prosecutor may not question character witness about accused's misconduct absent good faith belief that misconduct occurred); 3A J. Wigmore, *Evidence* § 988, at 921 (Chadbourn rev. 1970) (attacking a witness' character indirectly by insinuation "should be strictly supervised by forbidding it to counsel who do not use it in good faith"); *see also United States v. Madden,* 482 F.2d 850, 852 (8th Cir.), *cert. denied,* 414 U.S. 1026, 94 S.Ct. 453, 38 L.Ed.2d 318 (1973) (attempt to impeach witness by showing merely an accusation of misconduct has been uniformly prohibited). Although the prosecutor in this case had some information (even if incorrect) about a possible indictment, an indictment does not amount to a conviction of a crime, and only the latter is admissible for impeachment purposes. Fed.R.Evid. 609. Proper questions relating to the investigation might have indicated bias by Barnett against FmHA, but the questions here went far beyond mere investigation.

Cumulatively, these errors warranted the grant of a new trial upon the trial court's finding that the errors seriously infected the fairness of the trial.

 While not entitled to a perfect trial, a defendant is entitled to a fair trial. In the final analysis, the trial judge, not an appellate court reading a cold record, can best weigh the errors against the record as a whole to determine whether those errors in the conduct of the trial justify a new trial. *See Arizona v. Washington,* 434 U.S. 497, 514, 98 S.Ct. 824, 834, 54 L.Ed.2d 717 (1978) (concluding that trial judge is far more conversant with factors rele-

vant to determination of mistrial because of prosecutorial misconduct than any reviewing court could possibly be). As has often been observed in this Circuit, "it is difficult for an appellate court on a cold record to reproduce accurately for itself the warm vigor and atmosphere of the jury trial." *La Barge Water Well Supply Co. v. United States,* 325 F.2d 798, 801 (8th Cir.1963). And while the issue here is close, it is one in which we defer to the ruling of a respected, able trial judge.

Accordingly, based on the record before us, we cannot say that the trial judge abused his discretion in granting a new trial.

### III. CONCLUSION

We affirm the grant of a new trial and reject the Government's appeal.