UNITED STATES of America, Appellee,

v.

**Randall ROGERS, Appellant.**

UNITED STATES of America, Appellee,

v.

**Scott J. PHILIPP, Appellant.**

Nos. 92–1857, 92–2217.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1992.

Decided Jan. 7, 1993.

Rehearing and Rehearing En Banc Denied Feb. 15, 1993 in No. 92–2217.

Richard J. Linnerooth, Fargo, ND, argued for Randall Rogers.

Monty G. Mertz, Fargo, ND, argued, for Scott Phillip.

Dennis D. Fisher, Asst. U.S. Atty., Fargo, ND, argued (Keith W. Reisenauer, Asst. U.S. Atty., on the brief), for U.S.

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN, Circuit Judge, and LARSON,* Senior District Judge.

WOLLMAN, Circuit Judge.

Randall Rogers and Scott J. Philipp appeal from their respective convictions and sentences for conspiracy to possess with intent to distribute and distribute LSD in violation of 21 U.S.C. § 846. With respect to Rogers, we affirm both his conviction and his sentence. We affirm Philipp's conviction, but we vacate his sentence and remand for resentencing.

I.

The government's principal witness was Frank Basco. Authorities first learned of defendants' drug-related activities when they interrogated Basco on October 9, 1991, after arresting him for selling LSD to an undercover officer. Basco informed the officers that Rogers and Philipp were his sources for the LSD.

At trial, Basco testified that he first met Rogers in Colorado in December 1990, when both men were interned in the Boulder County Jail. In late July 1991, Basco travelled to Boulder, Colorado, to contact Rogers to purchase some LSD. Basco was unable to locate Rogers on this trip. Basco did, however, obtain 400 dosage units of LSD from two of Rogers' associates, fifty of which he sold on July 30, 1991, to undercover officer Dennis Pederson in Fargo, North Dakota. Rogers' associates promised to convey Basco's request for additional dosage units to Rogers.

Basco's first transaction with Rogers occurred in early August 1991. Basco again travelled to Boulder from Fargo and obtained 1000 dosage units of LSD from Rogers at the residence he shared with Philipp. Rogers gave Basco the dosage units on the promise of future payment. Basco returned to Fargo and began to sell the LSD. On August 8, 1991, Basco transmitted a $900.00 money order to Rogers to pay for the 1000 dosage units. On August 9, 1991,

Basco sold Pederson 100 of these recently acquired dosage units. Basco also gave Pederson ten extra dosage units for the individual who had set up the deal.

In early September, Rogers and Philipp moved from Boulder, Colorado to Milwaukee, Wisconsin. Basco's second transaction with Rogers occurred on September 6, 1991, when Basco received 1000 dosage units of LSD in a birthday card from Rogers.

The third transaction occurred between September 7, 1991, and September 17, 1991, when Basco travelled to Milwaukee and obtained 1200 dosage units of LSD from Rogers and Philipp at their residence. On September 17, 1991, Basco sold 500 dosage units to Pederson. On September 19, 1991, Basco sold an additional 600 dosage units to Pederson.

The fourth transaction occurred on October 6, 1991, when Basco again travelled to Milwaukee and obtained another 1000 dosage units of LSD from Rogers and Philipp at their residence. Basco returned to Fargo, where, on October 9, 1991, he sold 700 more dosage units to Pederson. The authorities arrested Basco after this sale. After his arrest, Basco agreed to cooperate with investigators and to provide information with respect to his sources of LSD, who remained unknown to the investigators. A search of Basco's apartment by authorities uncovered an additional 100 dosage units of LSD.

On October 15, 1991, Basco made a telephone call from the United States Marshal's Office in Fargo to Rogers and Philipp in Milwaukee. Basco claimed that he had sprained his ankle and could not drive to Milwaukee, but requested 1000 additional dosage units of LSD from Rogers. Rogers and Philipp agreed to drive to Fargo the following day and deliver approximately 1000 dosage units of LSD to Basco. As arranged, Rogers and Philipp drove to Fargo on October 16, and met Basco at a rented room in the Motel 75. A few hours

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

after their arrival, Rogers and Philipp were arrested at the motel room.

The district court found that 4200 dosage units of LSD were transferred to Basco during the course of the conspiracy. Authorities obtained 2010 of these dosage units from Basco—1910 via sales to Pederson and 100 from a post-arrest search of Basco's apartment. The 2010 units weighed 10.2 grams. The law provides a mandatory minimum sentence of 10 years for an offense involving "10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD)." 21 U.S.C. § 841(b)(1)(A)(v). Accordingly, the court sentenced both Philipp and Rogers to 120 months' imprisonment, to be followed by five years of supervised release.[1]

## II.

Philipp and Rogers both raise the following challenges to their convictions: (1) that the evidence was not sufficient to support their convictions; and (2) that the district court erred in not departing downward from the applicable sentencing range due to "sentencing entrapment" by the government. Philipp also argues that the district court erred in denying his motion for a new trial based upon newly discovered evidence. Last, Philipp argues that the district court erred in attributing to him the entire amount of drugs involved in the conspiracy for sentencing purposes. He contends that the district court failed to make the additional required finding that the sale of such quantities was reasonably foreseeable to him in accordance with U.S.S.G. § 1B1.3, App. Note 1 and *United States v. Jones,* 965 F.2d 1507, 1517 (8th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 346, 121 L.Ed.2d 261 (1992) and — U.S. ——, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992). We address these issues in turn.

First, Philipp and Rogers contend that the evidence is insufficient to support their convictions. "When reviewing for sufficiency, we examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences." *United States v. Ivey,* 915 F.2d 380, 383 (8th Cir.1990). We will reverse "only if we conclude that a reasonable factfinder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements." *Id.*

■■■ Philipp was found guilty of conspiracy. To convict a defendant of conspiracy, the government must prove beyond a reasonable doubt that there was an agreement to achieve some illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became a part of the conspiracy. *Id.* at 384. Because the nature of a conspiracy requires secrecy, the agreement need not be express or formal, but may be established by way of inference from the surrounding circumstances. *Id.* (*citing United States v. Gooden,* 892 F.2d 725, 729 (8th Cir.1989), *cert. denied,* 496 U.S. 908, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990)). Once a conspiracy has been established, even slight evidence connecting a defendant to the conspiracy may be sufficient to prove the defendant's involvement. *Id.* Nevertheless, evidence of association or acquaintance, though relevant, is not enough by itself to establish a conspiracy. *Id.*

■■■ The district court pointed to the following evidence supporting Philipp's conviction. Basco testified that Philipp was present at some of the transactions and on one occasion retrieved a sheet of LSD for Basco from Rogers' bedroom upon Rogers' request. Basco also testified that Philipp and Rogers were "partners" in the LSD-

1. The court used the following procedure in imposing sentence. Rogers and Philipp were charged with having sold Basco 4200 dosage units of LSD. The government obtained 2010 units, with an aggregate weight of 10.2 grams. Instead of extrapolating the weight of the additional dosage units, the court chose to base the sentences upon the lesser amount of the weight recovered. The offense level for the weight of the dosage units was 32. Rogers had a criminal history category of II. Philipp had a criminal history category of I, for which the Guidelines provided a range of 121 to 151 months. U.S.S.G. § 2D1.1. The district court granted Rogers a two-point reduction in offense level for acceptance of responsibility under U.S.S.G. § 3E1.1, which provided a range of 108 to 135 months for him.

selling enterprise. Moreover, Philipp accompanied Rogers to Fargo on the day of his arrest. The district court held that "[g]iving the testimony the "spin" most favorable to the prosecution, the court is forced to conclude that the aggregate does support the jury's findings" as to Philipp. District Court Order of Jan. 14, 1992, at 3. After examining this evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences, we cannot say that the factfinder must have entertained a reasonable doubt as to Philipp's guilt on the conspiracy charge. Accordingly, we affirm Philipp's conviction.

■ Like Philipp, Rogers challenges the sufficiency of the evidence supporting his conviction for conspiracy and for possessing LSD with the intent to distribute. The government's case established Rogers' substantial involvement in the conspiracy. Rogers was Basco's principal contact during the duration of the enterprise. Basco testified that Rogers transmitted LSD to him in person and via the mail, and the jury believed him. The evidence presented at trial supports reasonable inferences that Rogers' relationships with Basco and Philipp and his own activities were a vital part of the conspiracy's operations and that his own possession of LSD brought them about. The district court found that "[t]he evidence is clearly sufficient as to Rogers, once a jury has determined that Mr. Basco has any credibility at all." D.Ct. Order of Jan. 14, 1992, at 2. Accordingly, we uphold the district court's determination that there was sufficient evidence to support Rogers' conviction.

■ Both Philipp and Rogers argue that the district court erred in refusing to depart below the mandatory minimum sentence because the government had engaged in "sentencing entrapment." We have described sentencing entrapment as "outrageous official conduct [that] overcomes the will of an individual predisposed only to dealing in small quantities" for the purpose of increasing the amount of drugs in the conspiracy and the resulting sentence of the entrapped defendant. *See United*

*States v. Lenfesty*, 923 F.2d 1293, 1300 (8th Cir.1991), *cert. denied*, —— U.S. ——, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991). *See also United States v. Calva*, 979 F.2d 119 (8th Cir.1992). We do not agree that the government entrapped Philipp and Rogers in this case. Philipp and Rogers do not argue that they were not predisposed to commit the offense for which they were convicted. Moreover, Philipp and Rogers dealt solely with Basco and not the government agent, Pederson. With the exception of the last transaction, Basco was not acting in cooperation with the government. Indeed, Philipp and Rogers have failed to show that the government was even conscious of their existence when Pederson was arranging buys of LSD from Basco. We fail to understand how the government can be unaware of a defendant's existence but nonetheless be guilty of intentionally entrapping him for sentencing purposes or otherwise. The district judge found that the defense of sentencing entrapment was "not available to the defendants." District Court Statement of Reasons of April 7, 1992, at 5. We agree.

■ Philipp next argues that the district court erred in denying his motion for a new trial based on newly discovered evidence. The "newly discovered evidence" to which Philipp refers is a letter to the district court from co-defendant Rogers exculpating Philipp. Rogers, however, maintained his silence during the trial and submitted this letter only as a post-trial statement. In *United States v. Offutt*, 736 F.2d 1199, 1202 (8th Cir.1984), we observed that "when a defendant who has chosen not to testify subsequently comes forward to offer testimony exculpating a codefendant, the evidence is not 'newly discovered.'" Accordingly, the district court did not abuse its discretion in denying Philipp's motion for a new trial.

■ Last, we turn to Philipp's argument that the district court erred as a matter of law in attributing all the quantities of LSD implicated in the conspiracy to him based solely upon his conviction of conspiracy. Philipp contends that under U.S.S.G. § 1B1.3 App. Note 1, the district court was

required to make an additional finding of foreseeability with respect to him before it could attribute to him all the drug quantities implicated in the conspiracy.

██ Under the Guidelines, the district court was required to determine Philipp's base offense level based upon all acts "that occurred during the commission of the offense of conviction," here, the conspiracy. U.S.S.G. § 1B1.3(a)(1). The base offense level for drug offenses is determined by the quantity of illegal drugs attributable to the defendant. *United States v. Candie,* 974 F.2d 61, 64 (8th Cir.1992) (*citing* U.S.S.G. § 2D1.1(c)). The sentencing judge must determine the quantity of illegal drugs attributable to the particular defendant and the government must prove this quantity at sentencing by a preponderance of the evidence. *Id.* The district court could sentence Philipp for LSD possessed and sold by Rogers only if it found by a preponderance of the evidence that Rogers' activities were in furtherance of the conspiracy and were either known to Philipp or were reasonably foreseeable to him. *Jones,* 965 F.2d at 1517. *Accord United States v. Edwards,* 945 F.2d 1387, 1392 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992). *See* U.S.S.G. § 1B1.3 App. Note 1, Illustration e.

In its statement of reasons appended to its judgment, the district court specifically noted that "the presentence report shows the following claimed sales by Rogers; and by virtue of the conspiracy conviction, also attributable to Philipp." D.Ct. Statement of Reasons at 2. Under this rationale, the district court attributed the entire 10.2 grams of LSD associated with the conspiracy to Philipp, which resulted in a statutorily mandated minimum ten-year sentence for an offense involving ten grams or more of a mixture or substance containing a detectable amount of LSD. 21 U.S.C. § 841(b)(1)(A)(v). The district court further noted that it "imposed ten-year sentences because it ha[d] no discretion in the matter." D.Ct. Statement of Reasons at 6.

Although the record may very well support a finding that the entire 10.2 grams of LSD are properly attributable to Philipp, that is a question of fact to be determined by the district court in accordance with the standards set forth in *Jones.* Accordingly, we vacate Philipp's sentence, and remand for resentencing with the direction that the district court make express findings concerning foreseeability.

We have considered appellants' remaining arguments, and we find that they are without merit.

Philipp's sentence is vacated and the case is remanded to the district court for resentencing.

The judgment of the district court is affirmed in all other respects.